Morning. Good morning. I am John Quirio of Horvitz & Levy, and I represent the appellants John Kirkland and Ann Kirkland, both individually and in her capacity as trustee of the Bright Conscience Trust. I intend to reserve five minutes for rebuttal. Sure. I'll keep track of my time. Good. The court should reverse the lower court's orders refusing to compel arbitration because, first, the claims at issue arise out of and or relate to broad arbitration clauses in agreements between Mr. Kirkland and the Bright Conscience Trust on the one hand and Detter EPD Investment Company on the other hand. Counsel, that's the issue that causes me some puzzlement in your position. The claim is for fraudulent transfer, correct? What is the nature of that claim? Isn't that either a statutorily based or a tort claim? Well, the fraudulent transfer claims at issue are brought under Sections 544, 548, and 550 of the Bankruptcy Code, and under those claims the trustee is of the creditors to the estate. But, right, so you're saying, in my question I said is it a tort claim or a statutory claim, and your answer is it's basically a statutory claim in this context. I think that's right. But it's not a contract claim. I think that's really not particularly relevant here, Your Honor, because the important thing is that it at the very least relates to the transactions at issue in the contracts containing the arbitration clauses between the debtor and Mr. Kirkland and the trust. Well, that could be a defense to a fraudulent transfer, I guess, where the answer the defense is, well, it wasn't fraudulent because I had a right to do it because I had a contract that allowed me to do it. But I don't see how it's an arbitrable claim. Well, and backing up a little bit, we maintain that it is arbitrable because the language of the arbitration clauses is very broad. This Court has said in several cases that the language arising out of or relating to doesn't have to arise out of. Your Honor posited that it's not a breach of contract claim. Well, perhaps that might be the arising out of ground. But the relating to, it can be a statutory claim and still relate to a contract. But stepping back, and I think this is the really important point on that issue, is that Your Honor mentioned is this an arbitrable claim. Well, that's really the issue here. And these arbitration clauses clearly and unmistakably delegate this arbitrability issue to an arbitrator. Now, the default rule Are you familiar with this Court's sort of venerable old case of Johnson v. England? Yes, I'm familiar with that case. And we said there that arbitration wasn't appropriate because the key parties hadn't agreed to the arbitration clause, namely the trustee and the other creditors. Well, that case arose in the labor relations context. It did, but why isn't that principle applicable here? Well, I think the reason is because if you look at that case carefully, it actually has a lot of language that is very hostile to arbitration. It posits that there are automatically conflicts between the bankruptcy context and arbitration. And that language really has, I think, been superseded by later Supreme Court cases in the Has the principle that the trustee in bankruptcy and the general creditors didn't agree to the arbitration, has that been undermined in any way? Well, I think the important thing to remember is Let me say yes or no question. Has that part of Johnson been overruled or undermined? Well, I don't think that proposition is at issue here or been undermined. Well, that seems to me the main point. Well, I think the Johnson case, it's right as far as it goes, but it doesn't go far enough. And if you could let me explain, the Section 550 of the Bankruptcy Code, which is the provision that allows fraudulently transferred claims to be brought back into the estate, it's the section that makes all of this having any point, right? I mean, avoiding a transfer out of the estate is all well and good, but if you can't bring the assets back in, what's the point? Section 550 says that it empowers the trustee to bring fraudulently transferred assets back into the estate for the benefit of the estate. And I think those, that phrase is very important because it shows that the trustee doesn't just stand in the shoes of the creditors, it also stands in the shoes of the debtor estate itself, as the trustee does for all bankruptcy claims. So you would disagree with the Second Circuit's holding that a fraudulent transfer claim in this context belongs to the creditors? I don't, I disagree to the extent it's saying that it belongs only to the creditors. I think it does belong to the creditors, that's true, but it also belongs to the debtor estate. So it's right as far as it goes, but it doesn't go far enough to recognize that, in fact, it also belongs, the trustee represents the debtor estate as well. And thus, in that capacity, is bound by pre-petition arbitration contracts that the debtor entered into. Had there been no bankruptcy and the creditors themselves sought to bring a fraudulent transfer claim directly against the debtor, would there be arbitration? Well, if a creditor separately tried to bring it outside of bankruptcy, that may be perhaps not. But that's not really the issue here, because in a bankruptcy case, the debtor, excuse me, the trustee always represents both the estate of the debtor and in the case of... So you do disagree with the Second Circuit's analysis then, because part of their point was that if the creditors brought this, that you stand in the shoes of the creditors and had they brought the claim, arbitration would be completely irrelevant because they were never parties to the agreement. Right, and I think we disagree to the extent it says that thus the agreement is not binding. We agree that they stand, that the trustee stands in the shoes of the creditors, but we also posit that they stand in the shoes of the debtor estate as well. And what authority do you use for that? Is it just Section 550, or is there some case law that you're relying on for that? Smith v. Arthur Anderson from this court says that in general, the trustee always stands in the shoes of the debtor estate in bringing claims against outside parties. So, and there are other cases, Williams v. California First Bank, and so we would posit, but really the important thing I think that this court should remember is on this issue of arbitrability, which Your Honor posited in the beginning, this is an arbitrability issue. Do the arbitration clauses here apply to the trustee's claims? That is an issue that while ordinarily is for a court to decide, here the arbitration clauses at issue clearly and unmistakably delegate that issue to an arbitrator, and there's a long line of Supreme Court cases and cases from this court that say that when that is the case, when there is clear and unmistakable language in arbitration clauses delegating the arbitrability issue to an arbitrator, then that's for the arbitrator to decide. And doesn't Thorpe give the bankruptcy judge the right to overrule that? No, I think Thorpe is actually a logically subsequent issue. This is an antecedent issue of arbitrability, whether the arbitration agreement applies at all. What Thorpe deals with is the issue after that, which was an arbitration clause that does apply to the claims at issue. Should it be enforced, or as a matter of public policy, bankruptcy purposes, should it not be enforced because of a perceived conflict? And so that's why in our briefs we argued both that the arbitrability issue that the trustee has raised should be sent to the arbitrator, and that also there is no conflict here. And if I could briefly address the conflict issue, there is no conflict here, because with respect to those fraudulent transfer claims, Mr. Kirkland and Mrs. Kirkland in her individual capacity have a Seventh Amendment and an Article III right to a jury trial in a federal district court of those claims. I was going to ask you about that, too. At the time the bankruptcy judge made the ruling, Kirkland hadn't yet filed an answer, right? At the time that the bankruptcy court denied the motion to compel arbitration, that's correct, and then subsequently filed an answer. And there he demands a jury trial. What is the significance of that? I don't think there's any significance to that. Before he filed a motion to compel arbitration, Mr. Kirkland moved in the district court to withdraw the reference to the bankruptcy court on these very grounds that, in fact, he had an Article III and Seventh Amendment right to a jury trial in the district court. The district court denied that motion, and that's a non-appealable order, so he couldn't do anything about that at that point. And then he repeated those arguments in the motion to compel arbitration, and then once the motion was denied, he filed an answer. And as the bankruptcy court recognized in granting a stay pending appeal, that issue of the Seventh Amendment and the Article III right to a district court jury trial is really significant here. It really makes the difference and shows that there is no conflict from arbitrating those claims, because if they're not arbitrated, they will have to go forward in a different form anyway. The bankruptcy court. Why wouldn't we say to the bankruptcy judge, look, you played the cards you were dealt at the time that this stuff was before you, but now that he's filed an answer demanding a jury trial, go back and reconsider it in light of the demand? Wouldn't that make some sense? Well, we would certainly welcome a reconsideration of the motion to compel arbitration in light of the answer and the jury demand. I think that would be, if this court were to. Didn't Judge Otero suggest that might, that might change the complexion of it or am I misremembering? I don't recall Judge Otero saying that in his district court order. I think the stay order by the bankruptcy court was the one that indicated that that would. Maybe it was there. That the answer hadn't been filed, and so had that been filed, it might have made a difference in his decision. Why wouldn't that be a good resolution to this? Well, we think that it's clear one way or the other that this is a matter of law, and so the bankruptcy court really is not going to have any discretion here, and so it would probably just be more efficient in terms of judicial economy to just rule now that because this will have to go forward in district court if it's not arbitrated, there is no conflict from arbitration with any of those bankruptcy purposes, and thus, arbitration should be compelled. You mentioned you wanted to save some time. Let me see if either Judge Graber or Judge Dorsey have any. Not at the moment. Thank you. Thank you, Your Honor. Thank you very much. You'll have four minutes left. Good morning. Good morning. May it please the Court. Corey Weber on behalf of Appellee Jason Amrun, Chapter 7, Trustee. Your Honors, the question here is really whether or not the Court is going to apply Thorpe. According to Appellant's position, Thorpe really has no relevance, that the bankruptcy court had absolutely no discretion to deny arbitration, and that's simply incorrect under the twin cases of Thorpe and Eber, both Ninth Circuit cases from 2012, which state that if the appeals court looks to see whether or not the bankruptcy court had discretion to deny arbitration, if the court finds that the bankruptcy court did, you only review for abuse of discretion. Counsel, it seems to me it works sort of the opposite way. I don't understand how there could be discretion to permit arbitration. I don't understand how these claims are ever arbitrable. And if that's true, there's no discretion to permit arbitration. Well, I think that's correct, Your Honor. With the fraudulent transfer claim, which is based in statute, as Your Honor reflected earlier in questioning, it's a claim of creditor prior to the bankruptcy case and creditors in general. And the trustee only succeeds to those rights by virtue of Section 544 and 548 of the Bankruptcy Code. Otherwise, those are claims of creditors. So the trustee standing in the shoes of creditors on those claims can't be bound by something that the debtor executed prepetition when the debtor never had any right to execute an arbitration agreement as to those claims. The claims didn't belong to the debtor. Well, so why is it a discretionary call? Why wouldn't it be, as a matter of law, these cannot go to arbitration? Well, I think Your Honor is correct. In terms of if this Court believes, as we cited in the briefs before the district court, that the claims are simply claims that weren't executed by the applicable parties, the creditors prepetition, then I agree. It's not an issue that goes under Thorpe. It's simply not arbitrable because the trustee is not the successor of the entity that executed it. To the extent that the court believes that, on the other hand, that the debtor somehow bound the trustee under appellant's argument, then the Thorpe analysis would apply. The bankruptcy court could consider whether or not the purposes of the underlying bankruptcy code are served or not served. And then you'd go to the discretion or non-discretion standard in Thorpe and Eber. Does Thorpe hold, or does Thorpe control the issue of who decides arbitrability? It does, because it says the bankruptcy court has discretion to determine whether the underlying purposes of the bankruptcy code are in conflict as to claims. And actually, Eber commented on this as well. And stated that when a bankruptcy court considers conflicting policies, as the bankruptcy court did here, we acknowledge its discretion to defer its determination, and defer to its determinations that arbitration will jeopardize a court bankruptcy proceeding. So both Thorpe and Eber recognize that the bankruptcy court has this discretion. Has the discretion to not only consider underlying facts, but also underline policy differences as to whether or not arbitration is appropriate. To the extent that those claims are subject to potential arbitration. Does Kirkland's answer change anything? I don't think it does, Your Honor. Because Judge Robles did consider the answer in terms of the motion to stay the adversary proceeding in the bankruptcy case. And Judge Robles reflected that these are interesting issues on appeal. In the transcript, which is part of the excerpts of record, the court stated that specifically if there was no stay, the parties would have to march down toward litigation. And we wouldn't be sure that significant time and expense wouldn't be expended. And he called it an interesting issue for appeal. But I don't think it fundamentally changes anything. Because at its core, these are all core claims. You have disallowance of proofs of claim, equitable subordination of proofs of claim. And you have fraudulent transfers, which even after the case of Bellingham at the Ninth Circuit, and executive benefits, the follow up case of the Supreme Court. These remain statutorily core claims, even the fraudulent transfer ones. The other ones are both constitutionally and statutorily core. But in looking at Congress's intent as to who's going to decide these issues, Congress is the one that drafted 28 U.S.C. Section 157B. Congress determined as to what was going to be listed as a core claim under the statute. And even if the bankruptcy court doesn't have the ability to enter final judgment on those type of claims, they still remain core claims. Let me ask you, the issue strictly before us is whether, assuming the arbitration, assuming there was a valid arbitration, whether the bankruptcy judge has the right to not enforce it, right? That doesn't answer the question of whether he would still get any kind of jury trial in district court. Well, the answer of a jury trial is under Bellingham and Executive Benefits, fraudulent transfer claims are subject to eventual jury trial if they make it that far. Everything pre-trial still occurs in the bankruptcy court. The bankruptcy court has the ability to file proposed findings of fact and conclusions of law under 28 U.S.C. Section 157. What I mean is a finding affirming the bankruptcy judge wouldn't answer one way or the other any possible stern issues, right? I mean, he could still get whatever rights he has to a regular Article III trial. He would, for instance, if the trustee were to take depositions in the bankruptcy court and then file a motion for summary judgment, the bankruptcy court could rule under the – on the motion for summary judgment and propose findings of fact and conclusions of law to the district court. The district court would then enter final judgment. And so it's the – So if – and if it didn't resolve on summary judgment, it sounds like you agree that they'd be entitled to a jury trial. On the fraudulent transfer claims, yes, up to – it would be heard in the bankruptcy court up to pre-trial, and then to the extent there was a jury trial, you're correct. It would go to the district court. But as to the disallowance and equitable subordination claims, there's no right to a jury trial on those. There's simply court claims, both constitutionally and statutorily. And I don't think that there's any dispute from appellants on that. The case law on that is bedrock. I guess they can – counsel can clarify, but I also understood that they were challenging only with respect to the fraudulent transfer. I think that's correct. I don't want to state appellants' position. We'll find out in a minute. So I think at the core are the two things that Your Honor mentioned. You know, one is that these claims at issue here, they're not properly subject to arbitration because they're either claims of creditors that existed prior to the petition date or they're rights that the trustee gains simply by virtue of the filing of the bankruptcy case in the bankruptcy code, giving the trustee the or to avoid and recover transfers. They're never – none of these are claims that the debtors ever had a right to agree to arbitrate. And if that were – if what appellant's position is stating is correct, every company that's engaged in bad acts, every individual that's engaged in bad acts, and in this case, the complaint alleges that the debtor operated as a Ponzi scheme, any company like that who engaged counsel or any outside actors or directors and officers would simply execute arbitration provisions, take away the authority from a bankruptcy court to determine things like this. That fundamentally alters what's in the bankruptcy code, the underlying purposes of the bankruptcy code of having bankruptcy courts decide and get to the bottom of these type of things to avoid piecemeal litigation, to avoid impacting the rights of creditors, especially where here Mrs. Kirkland and her trust asserts a multimillion-dollar first-priority secured claim. That's going to fundamentally affect the rights of other creditors in this Ponzi scheme case. Is that policy analysis changed in any way by Bellingham and Stern and the decision that says that these claims ultimately can't be finally adjudicated by the bankruptcy court, but they're going to have to go to an Article III court ultimately? Does that change the balance in any way because it puts these claims not solely within the bankruptcy court for determination? I don't think that it fundamentally does because, you know, the district court, at least in this case, has been the first appeals court in the case. So the district court has ended up hearing all these things anyway. So if the bankruptcy court makes a determination on some issues and the district court makes a determination on another issue, it still goes to the same source. What appellants are proposing is that a private arbitration panel result in a de facto bankruptcy. It's not something that's decided by the bankruptcy court. It's not something that's decided by the district court. It effectively takes that discretion and the court's authority away and hands it off to an arbitrator to decide. And I don't think that the analysis in Bellingham and executive benefits changes any of that. The only thing in that it changed is the ability of a bankruptcy court to enter a final judgment. Instead, they can enter proposed findings of fact and conclusions of law in fraudulent transfer cases. But I don't think that it fundamentally alters the analysis in Thorpe. And in fact, Thorpe cites back to, I think it's the Sherson case, if I'm correct, from the Supreme Court in interpreting what Congress's intent is in the Federal Arbitration Act. And the court can look to 28 U.S.C. Section 157B, which clearly lists the court claims, includes all these claims as court claims. And even if they're not constitutionally core and there's not the right to enter final judgment after Bellingham and executive benefits, Congress's intent was still to have these as court claims. And that hasn't changed after these cases. Can I ask just a purely practical question, just so I kind of understand the real life ramifications of this? The bankruptcy judge entered his order in 2013, right? Correct. Here we are in 2016. The ball hasn't advanced really. We've gone three years, nobody's getting paid. What is the disadvantage to arbitrate? I mean, why are we spending three years worrying about whether an arbitrator is going to decide this or... It's an important question. It's because the fundamental policy, especially in a case like this where it's a Ponzi scheme case, in this case, there were roughly $150 million in claims filed. That's not to say all of them are accurate or there aren't duplicates, but that's sort of the scope of claims that were filed in this case. And what the Kirkland's have suggested is taking the decision on a first priority secured claim for millions of dollars and taking that out of the bankruptcy courting, letting a private arbitrator decide it. And especially in a Ponzi scheme type case, the trustee believes that's fundamentally unfair to creditors. It's unfair to the process. And the Kirkland's only seek to enforce arbitration for their benefit. They think that they're going to get a better shake in arbitration than they would by taking this in front of the bankruptcy judge that's looked at over a hundred of these adversary clawback proceedings. And from Judge Otero, the district court judge, who's reviewed several appeals, including several appeals from the Kirkland's that he's dismissed. And so it's really about fundamental fairness. And you're right, Your Honor, it has taken years and we get calls all the time from creditors asking when the conclusion of the bankruptcy case will take place. And we'd like to push this along and bring this case to a conclusion. But we don't think it's fundamentally fair to have that done by an arbitrator when it's such an important claim, it's a secured claim, it's millions of dollars. And it really will affect the distribution in this case. It really will affect what creditors receive in this case. Thank you, Your Honors. Thank you, Mr. Weber. Picking up on Your Honor's last question, which really, I think, gets to the heart of the matter, arbitration really would be a much more speedy and inexpensive way of resolving this dispute. And it would achieve a lot of the purposes of streamlining that the trustee purports to advance here. Now, the trustee says that that would be unfair and that it would lead to a de facto private bankruptcy. But in fact, and this is all based on his notion that the bankruptcy court can somehow adjudicate these claims. Again- Well, that's not just his opinion, that's also the bankruptcy judge's opinion. Right, and with respect to the bankruptcy judge, that's incorrect because the bankruptcy judge is not going to be finding the facts with respect to the fraudulent transfer claims. Those facts, if they're not determined by an arbitrator, will be determined by a jury in a federal district court. So the risk of inconsistent positions or factual findings is present either way. And it would be much more speedy to do it in arbitration. So I think, for everybody concerned, arbitration would be a much more- Counsel, did you agree with opposing counsel that only the fraudulent transfer claims are subject to a jury trial, not the other priority issues? Well, not necessarily. The equitable subordination disallowance claims, we have arguments as to why we think those are subject to jury trial here, but for purposes of the motion to compel arbitration, we are definitely- You were limited to the fraudulent transfer claims, I thought, in that motion. No, no, they sought arbitration of all of the claims, including the disallowance and equitable subordination claim. Our argument with that is slightly different, which is that since the fraudulent transfer claims have to be arbitrated anyway, the claims, the disallowance- Like kindant non-jurisdiction, I guess. Perhaps, yes. But the point is that it would be most efficient to arbitrate the disallowance, the factual underpinnings of the disallowance claim. Keep in mind that the factual underpinnings, the allegations behind that disallowance claim are the exact same as tort claims that the trustee previously brought against John Kirkland and which have now been settled. So the arbitrator could very easily adjudicate and make factual findings with respect to the factual underpinnings of those claims, which overlap a lot with the fraudulent transfer claims. And then the bankruptcy court's power to order priority of claims would still be preserved. It could take the factual findings of the arbitrator and then determine whether those warrant disallowance or equitable subordination of the proofs of claim. Now, the arbitrator talks a lot, again, about the capacity in which he's bringing his fraudulent transfer claims. But he does not address the fact that this is an arbitrability issue, which the arbitration clauses have clearly and unmistakably delegated to an arbitrator to decide. So a court should not be deciding whether the arbitration clauses apply to those claims. Did your client properly preserve that for appeal, that question? Yes. Yes, we did. In fact, it's in fact the trustee that did not properly preserve the capacity argument because he did not make that argument in the bankruptcy court. He made that for the first time in his answering brief in the district court on the first level appeal. And then in reply to that answering brief in the district court, we made the argument that, in fact, this is an issue of arbitrability that has been delegated to an arbitrator to decide. So at the first opportunity, when it was first raised by the other side, we did raise that argument in the court below. So the trustee also mentions that we try to distinguish Thorpe and Eber when we do. Thorpe involves a claim that really was intertwined with a court proceeding. Whether you consider the fraudulent transfer claim here a core claim or a non-core claim or what it probably really is, which is a Stern v. Marshall claim, a claim that is designated core by the code but under Article III must be tried to a jury in federal district court, the result is the same. There can be no conflict from arbitration because either way, the bankruptcy court is not going to be deciding the factual merits of those claims. So the most efficient disposition is to order arbitration of all of the claims here. Thank you. No, but if I could ask my law clerk to come back to the back when we've adjourned, I'd appreciate it. The case just argued is submitted. Thank you, gentlemen. Good morning.
judges: Silverman, Graber, Dorsey